CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 25, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARTH DANIEL RICHMOND,<br>    Plaintiff, | )<br>) Civil Action No. 7:23-cv-00602<br>) |
| v. | )<br>) |
| | ) By: Elizabeth K. Dillon |
| CORRECTIONS OFFICER T. COX, *et al.*,<br>    Defendants. | )   Chief United States District Judge<br>) |

**MEMORANDUM OPINION AND ORDER**

Garth Daniel Richmond, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging claims for excessive force and deliberate indifference under the Eighth Amendment against defendants T. Cox and A. Castle. Defendants have moved for summary judgment. (Dkt. No. 21.) This motion will be denied.

I. BACKGROUND

**A. Plaintiff's Claims**

The allegations in Richmond's verified complaint arose when he was housed at Red Onion State Prison. (Compl., Dkt. No. 1; *see also* Dkt. No. 1-1 (grievance documents).) Defendants are correctional officers at Red Onion.

On November 15, 2021, at approximately 7:50 a.m., Richmond was escorted to the outside recreation modules by defendants. Richmond was fully restrained, handcuffed behind his back, with leg shackles applied. (Compl. ¶ 7.) When he reached the recreation module, he decided to decline his recreation time and return to his cell, telling this to Cox and Castle. (*Id.* ¶ 8.) While walking back to the cell block, Cox stated that Richmond "wasted my time by going outside and coming back in." (*Id.* ¶ 9.) Cox then called Richmond a "bitch" because he was telling inmates in the cell block that Cox was sneaking by inmate cells to take a recreation participation list. (*Id.*)

At approximately 7:55 a.m., Richmond and both defendants arrived back at cell 503 and Richmond took one step over the threshold into the cell, at which time Cox told him to "get on your knees bitch." (*Id.* ¶ 10.) Richmond told Cox about his no-kneel pass from a recent surgery, which was posted on the outside of his cell door. Richmond claims that both defendants knew about the pass because he had not kneeled for application of leg shackles five minutes earlier. (*Id.* ¶ 11.) Cox called Richmond a "bitch" again and told Castle, "I bet he doesn't go out after this" yanking violently at the chain connecting the leg shackles. (*Id.* ¶ 12.)

When defendants were not able to make Richmond fall, Castle told Cox to "slam this pussy." Cox then body slammed Richmond on the concrete floor while he was fully restrained with no way to brace himself. (*Id.* ¶ 13.) Cox began to pull his hair and apply his full body weight to the back of Richmond's right knee with his own knee, asking Richmond, "how's your knee now bitch?" After this, Castle made an announcement on his radio. (*Id.* ¶ 14.)

While waiting for supervisors to arrive, Cox continued to assault Richmond by pulling his hair and plunging his knee into Richmond' right knee, while Castle encouraged Cox by saying, "fuck him up." (*Id.* ¶ 15.) Richmond was escorted to cell block C-3 to be placed in a strip cell at the directive of the unit manager. (*Id.* ¶ 16.) Thirty minutes later, he began to feel a sharp pain in his groin and alerted the floor officer working on C-3. (*Id.* ¶ 17.) The floor officer told him to fill out an emergency grievance. This was not possible due to him being in a strip cell. (*Id.* ¶ 18.) Ten minutes later, he observed a large bulge protruding from his pubic area as he was attempting to use the restroom. (*Id.* ¶ 19.) He showed the injury to the floor officer who provided an emergency grievance and pen to him. (*Id.* ¶ 20.)

At approximately 5:00 p.m., he was taken to medical to be examined by Nurse Practitioner Jessee, who determined that the injury required that Richmond be taken to the hospital for an

emergency surgery assessment. (*Id.* ¶ 21.) Richmond had surgery on December 27, 2021. (*Id.* ¶ 22.)

Richmond alleges that Cox used excessive force against him by body slamming him face first while fully restrained and continuing to violently apply pressure to his right knee while he was not violating any prison rules or acting disorderly. (*Id.* ¶ 24.) He also alleges that Castle should be held liable for the assault on a bystander liability theory due to his failure to intervene. (*Id.* ¶ 25.)

He seeks declaratory relief, $30,000 in compensatory damages, and $45,000 in punitive damages. (*Id.* part VI.)

**B. Facts in Support of Defendants' Motion**

In support of their motion for summary judgment, defendants filed the affidavits executed by Cox, Castle, and T. Still, the Institutional Ombudsman Red Onion. (Dkt. Nos. 22-1, 22-2, 22-3.) Defendants also provided 15 MaxPro videos and 1 handheld video of the incident. (*See* Dkt. No. 24.)

The facts cited by defendants in their brief are that before filing a Regular Grievance regarding the November 15, 2021 incident, plaintiff submitted a Written Complaint on November 16, ROSP-21-INF-02057. Under the instructions for completing the Written Complaint, Richmond wrote that Officers Castle and Cox were involved in the incident. However, he made no statements about Officer Castle and has not submitted a Regular Grievance concerning Castle's involvement in the incident. (Still Aff. 15, Encl. C.) The 30-day time period to submit a Regular Grievance concerning the claims against Castle has expired. (*Id.*)

Defendants also cite paragraphs five and six of Cox's affidavit, and paragraph four of Castle's affidavit. These paragraphs state as follows:

> 5.   On arrival at Richmond's cell, he was placed in the cell facing the back of the cell to have his leg irons removed. He was also restrained with his hands cuffed behind his back as required by security procedures. I was aware that Richmond had a no kneel pass. In order

3

to have his leg restraints removed, he was required to stand with his feet firmly on the floor. Removing the leg restraints from an inmate who is in the standing position can be dangerous because once one ankle is released the legs are free. The keyhole for the leg restraints is located on the top of the restraint. I bent down to access the restraints and as I tried to place the key in the keyhole to unlock the leg restraints, Richmond kept moving his foot. I believe it was his left foot because I usually started on the left when removing restraints. I tried to hold Richmond's foot down on the ground so I could insert the key to take off the restraint. He kept talking and moving his foot away which made it harder for me to insert the key. I gave Richmond several orders to keep his foot down on the ground. Officer Castle was standing directly behind me. Castle also instructed Richmond to stay calm and to comply with orders.

6.     Richmond continued to be verbally abusive to me and Officer Castle and was uncooperative the whole time. I continued trying to hold Richmond's foot down. The leg restraints are not very flexible. As I tried to hold Richmond's foot down, he continued to move against my orders and fell forward onto the floor. I saw him falling but it happened quickly and I could not catch him. He landed on his stomach. I immediately rolled Richmond onto his side to check him. Richmond was conscious, breathing and was aware of what happened. Officer Castle called for assistance over the radio. I rolled him back onto his stomach until assisting staff arrived.

(Cox Aff. ¶¶ 5–6.)

4.     On November 15, 2021, Officer Cox and I restrained and escorted Richmond to outside recreation. When we arrived outside at the recreation modules, Richmond wanted to pick his own module. Inmates are not permitted to choose their own recreation module. When he was told that he could not pick his recreation module, he said he wanted to return to his cell. During the escort back to his cell, Richmond was cursing and being belligerent. When we arrived back at the cell with Richmond, he was placed in the cell facing the back wall. He was standing in the cell as Officer Cox bent down to remove his leg irons. Richmond was not ordered to kneel. A copy of the no kneel order was on his cell door. Cox and I were aware of it. When Cox went to place the key in the keyhole to unlock one of the ankle restraints, Richmond moved his leg. Richmond was given instructions to stop moving so his leg restraints could be removed. The keyholes to unlock the restraints are very small, and with Richmond moving his leg, it made it difficult for Cox to insert the key.

(Castle Aff. ¶ 4.)

4

Finally, defendants' brief mentions at various points what the "video" apparently shows. (*See* Defs.' Mem. 6–8, Dkt. No. 22.) Defendants do not cite to a specific portion of any of the videos provided, or to any particular video.

### C. Plaintiff's Response

In response to the exhaustion argument, Richmond argues that there was not enough space on the form for further detail about Castle's involvement. Moreover, the fact that Castle was indicated as an individual "involved in the incident" implicates him as a bystander. (Dkt. No. 32 at 1; Still Aff., Encl. C.)

Regarding the excessive force claim, Richmond provides affidavits from two fellow inmates. (Dkt. Nos. 32-1, 32-2.) First, Charles Smith swears to hearing Cox tell Richmond to "get down on your knees you bitch," followed by Cox saying "I bet you don't go outside after this" and an ensuing rattling noise that is consistent with plaintiff's version of events of Cox yanking on the chains connecting plaintiff's legs. (Smith. Aff. ¶¶ 7–10.) Second, John Sherwood avers that he heard the words "slam this pussy" and Cox saying he sent Richmond to the hospital for creating more work for him. (Sherwood Aff.) Finally, Richmond argues that the video evidence corroborates his version of events, not that of defendants.

## II. ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

5

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**B. Exhaustion**

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting

6

*Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007). Defendants bear the burden of establishing that a plaintiff failed to exhaust. *Nealson v. Owens*, Case No. 7:23-cv-00445, 2025 WL 28471, at *3 (W.D. Va. Jan. 3, 2025).

Castle's only argument against exhaustion is that his name was not included in the description of the incident on the Written Complaint, and that Richmond did not describe his involvement in the incident. However, the only relevant questions in this circumstance are whether Richmond complied with VADOC complaint procedures, and in so doing, if Richmond "adequately notified prison officials of 'the nature of wrong for which redress is sought.'" *Roe v. Tucker*, Civil Action No. 3:24CV145 (RCY), 2025 WL 41932, at *6 (E.D. Va. Jan. 7, 2025) (quoting *Wilcox v. Brown*, 877 F.3d 161, 167 n.4 (4th Cir. 2017)). The PLRA does not impose a "name all defendants" requirement because the exhaustion requirement does not serve to provide notice to potential defendants. *Id.* (quoting *Jones*, 549 U.S. at 217). Instead, it provides the prison an opportunity to address complaints, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record. *See id.* (citing *Jones*, 549 U.S. at 219). Defendants do not contend that Richmond failed to comply with VADOC procedures. Also, the complaints filed by Richmond alerted prison officials to the nature of the wrong for which redress is sought—Cox's assault. *Id.* (citing *Wilcox*, 877 F.3d at 677 n.4).

Therefore, Castle's motion for summary judgment on the basis of exhaustion will be denied.

**C. Excessive Force**

To state a claim for excessive force under the Eighth Amendment, a plaintiff must allege a "sufficiently serious" injury, *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008), cause by a prison official acting with a "sufficiently culpable state of mind," *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In assessing the plaintiff's injury and the defendant's culpability, the "core judicial inquiry"

7

centers on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

The first inquiry is objective, and all that is required is something "more than *de minimis* pain or injury." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "This is not a high bar." *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). Defendants do not argue this component of the test on summary judgment.

Under the second, subjective inquiry, the Supreme Court has set forth "four non-exclusive factors to assist courts in assessing whether an officer has acted" with a sufficiently culpable state of mind. *Iko*, 535 F.3d at 239. These factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and (4) any efforts made to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Officer Cox argues that the application of force was necessary because he was attempting to remove plaintiff's leg irons and put him in his cell. Then, Cox argues that "the video shows" that Richmond fell because Richmond lifted his foot, and Cox did not "yank violently" on Richmond's restraints or body slam him. Third, Cox argues that he was in a "dangerous" position because of the no-kneel order, and he was forced to remove the leg irons while Richmond was standing. Once the leg was free, Richmond could have used the freed leg and attached restraint to harm the officer, and once Richmond fell, Richmond was in danger of harm, as well as the officers. And under the fourth factor, Cox tempered the need for force by attempting to remove the restraints while Richmond was standing. In sum, Cox argues that based on the "video evidence, the inconsistencies of Plaintiff's allegations in his Complaint, and Cox's Affidavit," he is entitled to summary judgment. (Defs.' Mem. 7.)

Contrary to these assertions by Cox, the court finds that there are issues of fact that preclude the entry of summary judgment in his favor. First, to the extent that Cox vaguely refers to the "video evidence," this violates Rule 56, which provides that a "party asserting that a fact cannot be . . . genuinely disputed must support that assertion" by "citing to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). General citations are not citations that satisfy this rule. *See, e.g.*, *Williams v. Adams*, CASE NO. 1:05-cv-00124-AWI-SMS PC, 2012 WL 12842781, at *6 (E.D. Cal. Nov. 29, 2012) ("Plaintiff's submissions of multiple paged documents as exhibits with only reference to the exhibit in general, without directing the Court to the specific part of the exhibit relied on, does not suffice to meet his opposing evidentiary burden."); *Cheathem v. NGM Ins. Co.*, No. 3: 12cv263-HEH, 2013 WL 509049, at *4 n.4 (E.D. Va. Feb. 11, 2013) ("Motions for summary judgment filed under Rule 56 must be anchored to specific citations to the record evidence.") (citing Fed. R. Civ. P. 56(c)(1)(A); *Twist v. Meese*, 854 F.2d 1421, 1424 (D.C. Cir. 1988)).

Second, Cox's version of events is simply at odds with that recounted by Richmond in his verified complaint, which is sufficient to defeat a motion for summary judgment. "A *pro se* litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge." *McCormick v. Hall*, Case No. 7:20cv00690, 2022 WL 4109513, at *2 (W.D. Va. Sept. 8, 2022) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)). For example, Richmond claims that he was body slammed, while Cox claims that Richmond slipped. If Richmond was forcefully body slammed, then this would support his claim under factors one and two. Moreover,

9

Richmond claims that Cox was driving his knee into the back of Richmond's knee. Cox's affidavit does not even address this assertion.[1]

For these reasons, the court finds that Cox is not entitled to summary judgment on Richmond's claim against him.

**D. Bystander Liability**

An officer can be liable under a § 1983 theory of bystander liability if he (1) knows that a fellow officer is violating an individual's constitutional rights, (2) has a reasonable opportunity to prevent the harm, and (3) chooses not to act. *Simmons v. Whitaker*, 106 F.4th 379, 384 (4th Cir. 2024).

Castle argues that he is entitled to summary judgment because Cox did not use excessive force. The court has concluded that there are genuine issues of material fact requiring a trial on Richmond's excessive force claim. Castle also argues that he did act because the "video shows that as soon as Richmond fell that Castle followed in behind Richmond to . . . safely secure the inmate until reinforcements arrived." (Defs.' Br. 8.) The videos show Castle following Richmond into his cell, but the videos do not show what happened in the cell, much less that Castle was "safely securing" Richmond. Therefore, the court cannot conclude, as a matter of law, that Castle acted to prevent Cox from assaulting Richmond.

Castle is not entitled to summary judgment on Richmond's bystander liability claim.

### III.  CONCLUSION AND ORDER

For the reasons stated in this opinion, it is HEREBY ORDERED that defendants' motion for summary judgment (Dkt. No. 21) is DENIED. It is FURTHER ORDERED that this matter is to be

---

[1] Despite defendants' failure to cite specific portions of the videos, the court has reviewed all of the video evidence and the videos do not corroborate Cox's version of events. Richmond is shown being brought to the front of his cell, and he appears to fall forward into the cell. It is unclear what caused him to fall. The videos also show the aftermath of several officers rushing to assist. They do not clearly show how Richmond fell or what happened inside the cell.

set for trial.  The court will enter a separate pretrial scheduling order after a trial date has been established.

The Clerk is directed to transmit a copy of this opinion and order to Richmond and to all counsel of record.

Entered: March 25, 2025.


/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge